IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT WARNOC,

    Plaintiff,

      v.

WELLS FARGO CLEARING
SERVICES, LLC,

    Defendant.

CIVIL ACTION FILE
NO. 1:25-CV-4440-TWT

## OPINION AND ORDER

This is an action to vacate an arbitration award. It is before the Court on Defendant Wells Fargo Clearing Services, LLC's ("Wells Fargo") Motion for Confirmation of Arbitration Award [Doc. 9]. For the reasons set forth below, the Court GRANTS Defendant Wells Fargo's Motion for Confirmation of Arbitration Award [Doc. 9].

### I.    Background

This case concerns the validity of an arbitration award. Defendant Wells Fargo initiated an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") against Plaintiff Robert Warnock[1] for breach of contract. (Resp't's Appl. & Mot. for Confirmation of Arb. Award, Ex. 3 ("Award"), at 2 [Doc. 9-3].) Pursuant to that proceeding, the arbitrator issued an award of $512,331.61 to Wells Fargo. (*Id.* at 4, 6 (awarding $469,236.17 in

---

[1] The Court uses the spelling of the Plaintiff's name as it appears in the parties' briefing.

compensatory damages and $43,095.44 in attorney's fees).) Warnock then filed a petition in state court to vacate the arbitration award and obtain a hearing before new arbitrators. (Notice of Removal, Ex. A ("Petition to Vacate & Supporting Br."),[2] at 3 [Doc. 1-7].) Since then, Wells Fargo has removed the case to federal court and moved to confirm the arbitration award. (*See generally* Notice of Removal [Doc. 1]; Resp't's Appl. & Mot. for Confirmation of Arb. Award [Doc. 9].)

The parties agree on the following timeline of events. Wells Fargo filed a Statement of Claim with FINRA in 2023, which initiated the arbitration proceeding. Warnock then filed claims against Wells Fargo in Georgia state court, (Notice of Removal, Ex. A ("Arbitration Records"),[3] at 46–62 [Doc. 1-1]), and filed his answer to Wells Fargo's Statement of Claim with FINRA, which attached and incorporated his state court complaint, (*id.* at 63–82). Wells Fargo removed the state court action to federal court and moved to compel arbitration. (*Id.* at 97, 99.) In March 2024, the parties participated in an initial prehearing status conference with the FINRA arbitrator. (*Id.* at 109.) While the circumstances of the prehearing conference are disputed, the parties agree that they discussed the pending motion to compel in federal court and that the

---

[2] The pagination of this exhibit reflects the PDF pagination. The Court additionally notes that the Notice of Removal [Doc. 1] contains three references to "Exhibit A" at Docs. 1-1, 1-6, and 1-7.

[3] The pagination of this exhibit reflects the PDF pagination.

arbitrator asked Warnock whether he was pursuing any counterclaims in the FINRA proceeding. (*See* Br. in Supp. of Def.'s Mot. for Confirmation of Arb. Award, at 6–7 [Doc. 11]; Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Confirmation of Arb. Award,[4] at 4 [Doc. 12].) In July 2024, this Court compelled arbitration and ordered Warnock to "submit his claims to arbitration or they will be deemed to be abandoned." (Arbitration Records, at 69.)

Once the proceeding was firmly within FINRA's jurisdiction, Wells Fargo requested a deadline for the filing of Warnock's claims in the FINRA proceeding, (*id.* at 71), to which Warnock responded and referenced the claims asserted in his answer to Wells Fargo's Statement of Claim, (*id.* at 72–73). The arbitrator denied Wells Fargo's request as moot in August 2024 because "Warnock cho[se] to rely on materials he has already submitted." (*Id.* at 76.) The arbitrator also denied Warnock's subsequent motion to dismiss, determining it was untimely and mooted by the August 2024 order. (*Id.* at 146.) In October 2024, after holding another prehearing status conference in which the parties discussed their claims, the arbitrator issued an order finding that Warnock had not presented any counterclaims. (*Id.* at 146.) In 2025, having dispensed with Warnock's counterclaims and finding fraud-related evidence

---

[4] The Court will refer to Warnock's response brief in this way, though the document appears to be accidentally labeled "Response to Respondent Wells Fargo Clearing Services, LLC's Petition to Vacate Arbitration Award and Memorandum in Support of Motion to Confirm."

presented in the final evidentiary hearing irrelevant and untimely, the arbitrator found for Wells Fargo on its breach of contract claim. (Award, at 4–7.)

## II.    Legal Standard

Although Warnock cites both federal and state arbitration laws to justify vacatur, the Court is persuaded that the federal vacatur standard applies. The Eleventh Circuit has not determined whether a general choice-of-law provision dictates the vacatur standard,[5] but district courts in this circuit have found that a general choice-of-law provision cannot establish the "clear intent" required to deviate from the Federal Arbitration Act. *See Gulfstream Aerospace Corp. v. OCELTIP Aviation 1 PTY. Ltd.*, 451 F. Supp. 3d 1370, 1378 (S.D. Ga. 2020) ("The parties' choice of law provision does not express the parties' intent to depart from the FAA's standard of vacatur."); *Valencia v. E\*TRADE Secs., LLC*, 2021 WL 9385892, at \*3 n.4 (N.D. Ga. Oct. 22, 2021). The Court therefore applies the FAA's vacatur standard for arbitration awards, notwithstanding the parties' general choice-of-law provision. (*See* Resp't's Appl. & Mot. for Confirmation of Arb. Award, Ex. 1 ("Promissory Note"), at 4 [Doc. 4].)

---

[5] In 2017, the Eleventh Circuit declined to determine whether a general choice-of-law provision was "sufficient to invoke review under the Georgia Arbitration Code" rather than the FAA. *Original Appalachian Artworks, Inc. v. JAKKS Pacific, Inc.*, 718 Fed. App'x 776, 780 n.3 (11th Cir. 2017).

4

Under the FAA, "[a] federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC, USW Local 200 v. Wise Alloys, LLC*, 807 F.3d 1258, 1271 (11th Cir. 2015); *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1283 (11th Cir. 2014) ("There is a presumption in the FAA in favor of confirmation of arbitrators' awards." (citation omitted)). This limited review "maintains arbitration's essential virtue of resolving disputes straightaway." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013). The FAA allows a district court to vacate an award under the following four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). Absent these grounds, "[e]ven a serious error" committed by an arbitrator will not justify vacatur. *Sutter*, 569 U.S. at 569 (citation omitted). A party seeking vacatur under 9 U.S.C. § 10(a) "bears a heavy burden." *See id.*

5

III.    Discussion

Wells Fargo's motion seeks to confirm the arbitrator's award, arguing that the arbitrator's conduct did not violate 9 U.S.C. § 10(a)(1)–(4) and that Warnock never properly filed any counterclaims. Although Wells Fargo acknowledges that Warnock attached his state court complaint and attempted to incorporate it into his answer to the bank's Statement of Claim, it points out that Warnock never "pa[id] the additional fee that would have been required to assert an affirmative counterclaim," (Br. in Supp. of Def.'s Mot. for Confirmation Award, at 5), and that FINRA's Dispute Resolution Services representative stated that FINRA did not recognize any of Warnock's filings as a counterclaim, (Br. in Supp. of Def.'s Mot. for Confirmation Award, Ex. 1 ("Barnes Decl.") ¶ 9 [Doc. 11-1].) Defense counsel additionally averred that, in the parties' March 2024 prehearing conference, Plaintiff's counsel stated that "Warnock was not asserting any claims as counterclaims in the FINRA [p]roceeding" and that "he had only attached [his state court complaint] to provide support to his objections to FINRA's jurisdiction over the breach of contract claim." (*Id.* ¶ 9.) Similarly, defense counsel averred that, when Wells Fargo raised the topic of the counterclaims in the October 2024 prehearing conference, Plaintiff's counsel "refused to answer" whether he was pursuing any counterclaims. (*Id.* ¶ 17.)

In Warnock's view, the arbitrator denied him the opportunity to be heard on his fraud counterclaim and therefore violated 9 U.S.C. § 10(a)(1)–(4).[6] (Petition to Vacate & Supporting Br, at 9.) When the arbitrator initially denied Wells Fargo's request to set a deadline for Warnock to file counterclaims, Warnock argues, the arbitrator's order "strayed from the scope of [Wells Fargo's] motion, and made additional findings and conclusions regarding the merit of other jurisdictional allegations and claims in the Complaint, while simultaneously admitting that he had heard no argument or evidence on these issues." (*Id.*) Regarding the March 2024 prehearing conference in which the arbitrator asked whether Warnock was pursuing any counterclaims, Warnock appears to assert that he did not disclaim the existence of his counterclaims but rather responded by "referenc[ing]" his answer to Wells Fargo's Statement of Claim. (*See* Pet'r's Resp. Br. in Opp'n to Def.'s Mot. for Confirmation of Arb. Award, at 4.) Regarding the October 2024 prehearing conference, Warnock argues that the conversation about their "claims and positions" was "informal,"

---

[6] The Court makes two notes. First, the Court construes Warnock's petition as seeking vacatur under 9 U.S.C. § 10(a)(1)–(4), though his petition focuses on § 10(a)(3)–(4) and his response brief focuses on § 10(a)(1)–(3). Second, the Court disregards Warnock's request for vacatur on other non-statutory grounds. *See Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015) ("While several judicially-created bases for vacatur had developed in this circuit over the past few decades, we held in *Frazier* that such grounds are no longer valid in light of the Supreme Court's decision in *Hall Street*." (citing *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010)).)

that he did not anticipate that his response would be used to eliminate his counterclaims from the proceeding, and that the hearing was not noticed as a merits hearing on any claims. (*Id.* at 6.)

The Court will confirm the arbitration award. First, the arbitrator did not exceed his powers or so imperfectly execute them as to justify vacating the arbitration award under 9 U.S.C. § 10(a)(4). Warnock does not dispute that he failed to pay the FINRA fee to file counterclaims and obtain the required three-person arbitration panel or that the FINRA Dispute Resolutions Services representative affirmed that FINRA was not treating his filings as a counterclaim. Moreover, the arbitrator concluded that no counterclaims existed only after finding that Warnock declined on multiple occasions to confirm he was pursuing them. The arbitrator's October 2024 order provides:

> The question of whether there is a counterclaim in this case was raised by Claimant. No counterclaim is designated in Respondent's answer, and Respondent's counsel would not state there is a counterclaim when given several opportunities to do so. I find there is no counterclaim in the pleadings.

(Arbitration Records, at 94.)

Nothing in Warnock's brief introduces sufficient doubt as to the arbitrator's exercise of authority. *See Mays v. Lanier Worldwide, Inc.*, 115 F. Supp. 2d 1330, 1346 (M.D. Ala. 2000) ("In deciding whether the arbitrator exceeding its authority, the court resolves all doubt in favor of arbitration." (citation omitted)); *Great Am. Ins. Co. v. Trach Duc Doan*, 2012 WL 13098715, at *9 (M.D. Fla. Sept. 25, 2012) ("[C]ourts must . . . resolve all doubts in favor

of the arbitrator's authority." (citation omitted)). Regarding the March 2024 prehearing status conference, the parties agree that the arbitrator directly asked Warnock during the March 2024 prehearing conference whether his attached state court complaint was intended to be a counterclaim. Wells Fargo has filed an affidavit specifically attesting that Warnock responded by disclaiming the existence of any FINRA counterclaims. (Barnes Decl. ¶ 8.) In contrast, Warnock's brief is unhelpful and vague on this topic. At no point does Warnock clarify how his counsel specifically responded to the arbitrator's question, other than stating he "referenced the prior filing of his response to the [Wells Fargo] [S]tatement of Claim." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Confirmation of Arb. Award, at 4.) "Referenc[ing]" a filing is too broad a term for the Court to attach any significance.

Regarding the October 2024 prehearing status conference, Warnock cannot show that the arbitrator exceeded his authority by arguing that his counsel misinterpreted the discussion, supposedly believing that his discussion of "claims and positions" was too "informal" to result in any determination on the counterclaims. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Confirmation of Arb. Award, at 4.) Here, the arbitrator appears to have acted within his means, and Plaintiff's counsel's subjective interpretation of the discussion does not control.

9

Regarding Wells Fargo's filed response to the counterclaims, the Court is not persuaded that the arbitrator was required to acknowledge the existence of counterclaims merely because Wells Fargo filed a response. The bank filed the response prior to the March 2024 status conference and stated it did so "[o]ut of an abundance of caution." (Br. in Supp. of Def.'s Mot. for Confirmation of Arb. Award, at 5; Reply Br. in Supp. of Def.'s Mot. for Confirmation of Arb. Award, at 4 n.3 [Doc. 13].)

Second, the arbitrator was not guilty of misconduct under 9 U.S.C. § 10(a)(3) for refusing to hear evidence at the final hearing related to the supposed counterclaims. Having determined that Warnock had not raised any counterclaims, the arbitrator was well within his means to exclude evidence pertaining only to the supposed counterclaims and not to the breach of contract claim. *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1359 (S.D. Fla. 2018) ("An arbitrator is not required to accept all the evidence a party seeks to introduce in an arbitration proceeding so long as the parties receive a fundamentally fair hearing." (citation omitted).) And he was within his means to determine which evidence pertained to which type of claim.

Third, and for similar reasons as described above, the Court finds that the arbitrator did not issue his decision using "undue means" under 9 U.S.C. § 10(a)(1) or show "evident partiality" toward either party under 9 U.S.C.

10

§ 10(a)(2). Warnock does not come close to showing any undue means, which he defines as "behavior that is immoral if not illegal." (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Confirmation of Arb. Award, at 8 (quoting *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992)).) And the Court fails to see how asking Warnock to confirm whether he was pursuing counterclaims evinces partiality toward Wells Fargo, as Warnock claims. (*See id.* at 9.) The Eleventh Circuit "strictly construe[s]" the phrase "evident partiality" and defines it as situations in which "there is (1) an actual conflict or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Torres v. Morgan Stanley Smith Barney, LLC*, 839 Fed. App'x 328, 331 (11th Cir. 2020) (citation modified).

These conclusions are consistent with the Court's obligation to defer to the arbitrator's process and award. *See Wise Alloys*, 807 F.3d at 1271; *Davis*, 762 F.3d at 1283. None of Warnock's remaining arguments about misapplying or failing to consider certain law or facts justify vacatur. *See Sutter*, 569 U.S. at 569 (citation omitted) (noting that courts must confirm an arbitration award notwithstanding "[e]ven a serious error" committed by the arbitrator). Judicial review of an arbitration award is not an opportunity to relitigate the full merits of the arbitration proceeding. *See id.* at 568–69 ("If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to

11

a more cumbersome and time-consuming judicial review process.'"). The Court

therefore grants Wells Fargo's Motion for Confirmation of Arbitration Award.

## IV.   Conclusion

For the reasons set forth above, the Court GRANTS Defendant Wells

Fargo's Motion for Confirmation of Arbitration Award [Doc. 9].

SO ORDERED, this ___13th___ day of May, 2026.


THOMAS W. THRASH, JR.
United States District Judge

12